IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CALVIN FOXX, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Case No. 3:22-cv-00986 |
| | ) | |
| BAH SHONEY'S CORP., | ) | JUDGE RICHARDSON |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is a motion for summary judgment (Doc. No. 28, "Motion"), filed by Defendant BAH Shoney's Corporation d/b/a Shoney's Restaurants. Via the Motion, Defendant requests summary judgment in its favor on the claims of Plaintiffs Calvin Foxx ("Foxx"), Reginald Mack ("Mack"), Justin McGhee ("McGhee"), Frederick Smith ("Smith"), Princess Scott, and Sade Scott (collectively, "Plaintiffs"). (*Id.* at 1). Defendant has filed a memorandum of law (Doc. No. 29, "Memorandum") in support of the Motion, along with a "Statement of Undisputed Material Facts in Support of [its] Motion for Summary Judgment" (Doc. No. 30, "Defendant's Undisputed Material Facts"). Plaintiffs filed a response (Doc. No. 38, "Response") in opposition to the Motion, along with a response (Doc. No. 39) to Defendant's Undisputed Material Facts wherein Plaintiffs both responded to Defendant's Undisputed Material Facts (*id.* at 1-8, "Undisputed Material Facts Response") and provided their own statement of additional disputed material facts[1] (*id.* at 9-22,

---

[1] Notably, and as is relevant here, at the time Plaintiffs' Additional Statement of Facts was filed, the version of the Local Rules in effect was dated January 24, 2020. The Court will rely on this version of the Local Rules when considering the Motion, and herein it will refer to this version of the Local Rules as "2020

"Plaintiffs' Additional Statement of Facts"). Defendant has filed a reply (Doc. No. 52, "Reply")

in further support of the Motion, as well as a response (Doc. No. 53, "Additional Statement of

Facts Response") to Plaintiffs' Additional Statement of Facts.

For the reasons described herein, the Court will **DENY** the Motion for Summary Judgment.

BACKGROUND[2]

Defendant employed Plaintiffs Foxx, Mack, McGhee, Princess Scott, Sade Scott, and

Smith. (Doc. 23 at ¶ 1). Plaintiffs each executed an Employee Acknowledgment Form[3]

---

Local Rule[s]" or "2020 LR." Notably, the 2020 Local Rules provided authorization (which no longer exists under the current version of the local rules) for non-movants to submit a statement of facts when faced with a motion for summary judgment. In pertinent part, they provided:

> [The] non-movant's response [to the movant's statement of facts] may contain a concise statement of any additional facts that the non-movant contends are material and as to which the non-movant contends there exists a genuine issue to be tried. Each such disputed fact must be set forth in a separate, numbered paragraph with specific citations to the record supporting the contention that such fact is in dispute. A copy of the statement of additional disputed facts must also be provided to opposing counsel in an editable electronic format.

2020 LR 56.01(c)(3). In other words, the 2020 Local Rules plainly contemplated non-movants filing a statement of disputed facts as Plaintiffs did via their Additional Statement of Facts. (Doc. No. 39 at pp. 9-22). The 2020 Local Rules were, alas, ambiguous as to what the purpose of such a statement was. But the Court need not dwell on the nature or effect of such ambiguity, because it is immaterial here.

[2] The facts that are stated herein without qualification are undisputed—a term the Court will use to describe both facts that are not in dispute *at all* and facts that are not in *genuine* dispute—and are treated as such. Alleged facts that are qualified here in some way (as for example by being prefaced with "Defendant asserts that") are in dispute and are treated as such. Some of the facts herein come from Plaintiffs' Undisputed Material Facts Response (Doc. No. 39 at 1-8), wherein they are not disputed by Plaintiffs in response to Defendant's assertion of them, and Defendant's Additional Statement of Facts Response (Doc. No. 53), wherein they are not disputed by Defendant in response to Plaintiffs' assertion of them.

Other facts contained herein come from record evidence and are cited (as being accurate) by the opposing parties in their respective briefing. Other facts (background, uncontroversial ones) are mutually stated in the parties' opposing briefing.

[3] Notably, there are two versions of the Employee Acknowledgment Form; Mack, McGhee, and Smith executed one version (Doc. No. 31-1 at 2-3 and 6), while Foxx, Princess Scott, and Sade Scott executed another version (*id.* at 1 and 4-5). Both versions are quite similar to one another, with only minor distinctions that the Court will address herein to the extent necessary, but the Court hereinafter will continue to refer to the form(s) as "Employee Acknowledgement Forms[s]" irrespective of the version(s) of the form(s) to which the Court is referring.

("Employee Acknowledgment Form") (Doc. No. 31-1 at 1-6), which is a one-page document that contains multiple provisions. (*Id.*). Most notably for present purposes, the Employee Acknowledgment Form contains a provision entitled "Employee's Acknowledgment of Receipt of [Defendant's] Arbitration Policy and Procedures," which states, "I agree to submit to binding arbitration under [Defendant's] Arbitration Policy and Procedures of any and all claims, disputes or controversies that exist now or arise later." (*Id.*). Further, both the Employee Acknowledgment Form and Defendant's Arbitration Policy and Procedures (the "Arbitration Agreement") have a provision ("Limitations Period Provision") purporting to specify a particular limitations period[4] for any claims that are subject to arbitration, requiring that any such claims be brought "within six (6) months of the event giving rise to the claim." (*Id.* at 1-6 and 9-10). Notably, the specified limitations period (six months) is patently shorter than it otherwise would be (under otherwise applicable law) absent enforcement of the Limitations Period Provision—so, naturally, its enforcement generally would be advantageous to Defendant and not Plaintiffs.

---

[4] The undersigned will highlight a few important points regarding the terminology used herein, by reference to something he wrote years ago:

> On the subject of limitations, courts often use language loosely, interchanging various terms for one another. For maximum clarity, terms must be defined so that important concepts are distinguishable from one another, then used consistently in accordance with those definitions. Herein, legal authorities will be paraphrased in terms of the following definitions to convey the concepts expressed therein, regardless of the terms used (or misused) by the authority being cited.

> As used herein, a "statute of limitations" refers to a legislative enactment, or codification thereof, that sets forth a limitations period.... A "limitations period" refers to the length of time-the specific number of days, months, or years-in which a given claim can be commenced, as set forth in a statute of limitations. "Limitations" [refers] to the legal doctrine whereby a plaintiff is barred from bringing a claim based upon the lapse of the applicable limitations period.

Eli J. Richardson, *Eliminating the Limitations of Limitations Law*, 29 ARIZ. ST. L.J. 1015, 1017-19 (1997). Herein, when using his own words, the undersigned intends to stick generally to this terminology, with the caveat that the case law and briefing of the parties he cites (or quotes) may not do so and thus may be less precise or looser in their terminology.

Rather than submitting their claims to arbitration, Plaintiffs filed their initial complaint (Doc. No. 1) in federal district court. Plaintiffs then filed their first amended complaint (Doc. No. 23), asserting claims against Defendant for racial discrimination, a racially hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101, *et seq.* ("THRA"). (Doc. No. 23). Thereafter, Defendant filed the Motion (Doc. No. 28), which Plaintiffs oppose.

LEGAL STANDARD

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). In other words, even if genuine, a factual dispute that is irrelevant under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.* Notably, "the party moving for summary judgment has the burden to show that he is entitled to judgment under established principles; and if he does not discharge that burden then he is not entitled to judgment." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 161 (1970).

In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party. *Tlapanco v. Elges*, 969 F.3d 638, 647 (6th Cir. 2020) (citing *Anderson*, 477 U.S. at 248). Likewise, the "court should view the facts and draw all reasonable inferences in favor of the non-moving party." *Pittman v. Experian Info. Sols., Inc.*, 901

F.3d 619, 628 (6th Cir. 2018) (citing *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Credibility judgments and weighing of evidence are improper. *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018).

<u>DISCUSSION</u>

Defendant moves for summary judgment as to all of Plaintiffs' claims, contending that Plaintiffs' "claims are time-barred and should be dismissed." (Doc. No. 29 at 7). In support of such argument, Defendant asserts that "Plaintiffs agreed to arbitrate any claim they may have against [Defendant] regarding their employment. . . . [and] agreed that such claims must be brought within six months of the events giving rise to the claim or be forever barred." (Doc. No. 28 at 2). Plaintiffs naturally take issue with Defendant's assertions, asserting by contrast that the Arbitration Agreement is unenforceable and that Plaintiffs' claims "were timely filed under the applicable law." (Doc. No. 38 at 1).

The relief Defendant requests via the Motion is dismissal of the action. (Doc. No. 28 at 1 ("Defendant . . . files this Motion . . . seeking dismissal of the Amended Complaint")).[5] In support of such request, Defendant asks the Court to enforce the Limitations Period Provision found within the Arbitration Agreement, which amounts to asking the Court to enforce the Arbitration Agreement and the provisions (and in particular one specific provision) thereof. In order for the Court to grant such request, the Court would need first to determine that the Arbitration Agreement is enforceable generally, then determine that the Limitations Period Provision in particular is

---

[5] It is common for judges and lawyers to refer to the effect of summary *judgment* as being *dismissal*. This is regrettable, (in the view of the undersigned) because it conflates the concept of *judgment* with the concept of dismissal. These two concepts are not always (and not even generally) the same in terms of their basis or their effect. However, such conflation is so common that the undersigned himself has resigned himself to doing this on occasion because it seems the current custom to do so. In any event, here it is clear that what Defendant is asking for is summary judgment as to all of Plaintiffs' claims and not some other remedy—such as, for example, dismissal under Rule 12(b)(6) or, as pertinent here, an order compelling arbitration of Plaintiffs' claims. The Court's terminology herein will reflect that reality.

enforceable, and then determine that application of the Limitations Period Provision results in the time-barring of Plaintiffs' claims. Only then would it be appropriate for the Court to award—based on the arguments presented by Defendant[6]—the particular relief that Defendant seeks: summary judgment on Plaintiffs' claims. Although (as discussed below), the Court finds that it would be proper for the Court to determine the enforceability of the Arbitration Agreement generally, the Court finds that it would be improper for it to determine the enforceability of the Limitations Period Provision found therein or the effect that enforcement of such provision would have on Plaintiffs' claims, because caselaw and the Arbitration Agreement itself indicate that these determinations instead should be left to the arbitrator (assuming, as Defendant contends, that the Arbitration Agreement is enforceable such that the case actually will go before an arbitrator).

In other words, even if Defendant's argument that the Arbitration Agreement is enforceable is found (or assumed *arguendo)* to be successful, that would mean that the case would need to go to arbitration—where the *arbitrator* would determine whether the Limitations Period Provision is enforceable, and if so whether such provision would effectively time-bar Plaintiffs' claims. That is, as discussed in greater detail below, the Court denies the Motion because it cannot grant the relief that Defendant requests, because even if the Court were to determine that the Arbitration Agreement is enforceable, the proper ultimate result of that determination could not possibly be the relief Defendant requests via the Motion: an award *by the Court* of summary judgment for Defendant based on the Limitations Period Provision. Rather, the result of that determination

---

[6] Notably, in their Response, Plaintiffs conceded that Mack's THRA claims were not filed within the *THRA's* one-year statute of limitations. (Doc. No. 38 at 15). The Court appreciates that such concession will likely make the ultimate disposition of Mack's THRA claims rather straightforward, but because Defendant did not assert that the applicable *statute of limitations* bars Plaintiffs' (including Mack's THRA) claims, but instead relied solely on the assertion that the *Limitations Period Provision* bars Plaintiffs' (including Mack's THRA) claims, the Court will not grant Defendant summary judgment on any of Plaintiffs' claims, finding that—as discussed in greater detail below—Defendant's argument for why it should attain summary judgment is an argument that must be left for an arbitrator.

would be submission of the case to an arbitrator—meaning that the *arbitrator* (rather than the Court) would decide the enforceability of the Limitations Period Provision and the extent to which application of that provision (if indeed it is enforceable) would have on Plaintiffs' claims. In short, under both applicable law and the terms of the Arbitration Agreement, the Court is prohibited from granting summary judgment to Defendant based on the Limitations Period Provision, which is the sole grounds for summary judgment advanced by Defendant in the Motion.

For purposes of ruling on the Motion, the Court assumes *arguendo* that the Arbitration Agreement is enforceable and focuses solely on the enforceability of the Limitations Period Provision and the effect of applying such provision to Plaintiffs' claims (and *who decides* such issues). The focus, more specifically, is on whether such issues are questions for the Court if—as the Court is assuming *arguendo* to Defendant's benefit—the Arbitration Agreement is enforceable such that the case needs to go to an arbitrator. The Court answers that question in the negative.

The Supreme Court of the United States has provided clarity regarding when an issue is to be determined by courts versus being determined by an arbitrator: "[I]n the absence of an agreement to the contrary, issues of substantive arbitrability . . . are for a court to decide and issues of procedural arbitrability, *i.e.*, whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002) (quoting Revised Uniform Arbitration Act of 2000 § 6, cmt. 2, 7 U.L.A. 13 (Supp. 2002) (emphasis added))).

The Sixth Circuit has shed light on this distinction as well, stating that whether the parties have "commit[ed] a dispute to arbitration . . . is a question of arbitrability for the courts to decide," but "[w]hether the parties have complied with the procedural requirements for arbitrating the case . . . is generally a question for the arbitrator to decide." *United SteelWorkers of Am., AFL-CIO-*

*CLC v. Saint Gobain Ceramics & Plastics, Inc.*, 505 F.3d 417, 419-20 (6th Cir. 2007) (internal quotations and citations omitted). In making such distinction, the Sixth Circuit has made clear that "[a] time-limitation provision involves a matter of procedure; it is a 'condition precedent' to arbitration[,] and it thus is 'presumptively' a matter for an arbitrator to decide. In the absence of an agreement to the contrary, in the absence in other words of language in the agreement rebutting the presumption, arbitrators rather than judges should resolve disputes over time-limitation provisions." *Id.* at 422. Put another way, "[g]enerally, issues of substantive arbitrability (*e.g.,* whether a dispute is subject to arbitration in the first instance) is a question for the court to decide and issues of procedural arbitrability (*e.g.,* whether prerequisites such as time limits have been met) are for the arbitrator to decide *unless* there is an agreement by the parties to the contrary." *Union Cent. Life Ins. Co. v. Andraos*, No. 1:09-CV-758, 2011 WL 6091771, at *3 (S.D. Ohio Oct. 21, 2011) (citing *Howsam*, 537 U.S. at 83), *report and recommendation adopted*, No. C-1-09-758, 2011 WL 6100275 (S.D. Ohio Dec. 7, 2011). *Accord Powers v. Charles River Lab'ys, Inc.*, No. 16-CV-13668, 2017 WL 4324942, at *7 (E.D. Mich. Sept. 29, 2017) ("The Sixth Circuit has clearly expressed the view that disputes over time limitation bars contained in arbitration agreements should be decided by arbitrators, not courts." (citing *United Steel Workers of Am., AFL-CIO-CLC*, 505 F.3d at 418-19)). Notably, "[i]f doubt exists over whether a dispute falls on one side or the other of this line, the presumption in favor of arbitrability makes the question one for the arbitrator." *United SteelWorkers of Am., AFL-CIO-CLC*, 505 F.3d at 420 (citations omitted).

In the present case, based on the aforementioned caselaw, the Court finds that questions regarding whether Plaintiffs' claims are barred by the Limitations Period Provision are issues of procedural arbitrability for the arbitrator to decide, not the Court. As discussed above, Sixth Circuit caselaw establishes that there is a presumption that disputes over time-limitation provisions are for

the arbitrator because "the 'limited' function of the federal courts is 'to ascertain[ ] whether the party seeking arbitration is making a claim which on its face is governed by the contract.'" *United SteelWorkers of Am., AFL-CIO-CLC*, 505 F.3d at 419 (quoting *United Steelworkers v. Am. Mfg. Co.,* 363 U.S. 564, 567-68 (1960)). Having found that disputes over time limitations provisions are not generally matters of "threshold arbitrability" (i.e., matters related to whether the parties are bound by a specific arbitration agreement and/or whether the arbitration agreement applies to the particular type of controversy), but instead matters related to "whether the prerequisite steps of a grievance procedure have been followed," the Sixth Circuit in *United SteelWorkers of America., AFL-CIO-CLC* found that "a time-limitation provision involves a matter of procedure . . . and it thus is presumptively a matter for an arbitrator to decide." *Id.* at 422 (internal citations and quotations omitted). From this, the Court concludes that questions regarding the enforceability and application of the Limitations Period Provision are for an arbitrator rather than the Court.

The conclusion that questions regarding the enforceability and application of the Limitations Period Provision are for an arbitrator (and not the Court) are supported not only by case law, but also by the language of the Arbitration Agreement. As discussed above, the Sixth Circuit has clarified that the aforementioned presumption only applies "[i]n the absence of an agreement to the contrary, in the absence in other words of language in the agreement rebutting the presumption, arbitrators rather than judges should resolve disputes over time-limitation provisions." *United SteelWorkers of Am., AFL-CIO-CLC*, 505 F.3d at 422. As in *United SteelWorkers of America, AFL-CIO-CLC*, where the agreement in question dictated that the issue should be decided by an arbitrator, the Arbitration Agreement dictates here the conclusion that questions regarding the Limitations Period Provision (including both its enforceability and its effect if indeed it is enforceable) should be decided by an arbitrator, not the Court. 505 F.3d at 422

("[f]ar from rebutting the presumption that this time-limitation provision should be decided by an arbitrator, other provisions of the . . . agreement support it."). The Arbitration Agreement states, in relevant part, that "any and all claims challenging the validity or enforceability of this Arbitration Policy and Procedures (in whole or in part), including but not limited to the . . .  shortened limitations period . . . shall be subject to arbitration" ("Delegation Provision"). (Doc. No. 31-1 at 9). Via the Delegation Provision, the parties clearly delegated  to an arbitrator disputes regarding the Limitations Period Provision. Notably, when the parties' agreement delegates a question to the arbitrator, the court has no power to decide that question. *See e.g.*, *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue."); Hatfield.v¡.M™M.lmps¡?lnc¡, 575 F. Supp. 3d 775, 781 (E.D. Ky. 2021) ("a court may not decide a merits question that the parties have delegated to an arbitrator" (quoting *Henry Schein, Inc.*, 563 U.S. at 69)). Therefore, assuming *arguendo* that the Arbitration Provision is enforceable, if Defendant wishes to enforce the Limitations Period Provision—which is what Defendant asks the Court to do via the Motion—that means having questions concerning the Limitations Period Provision (including questions concerning the enforceability of such provision and the ultimate result of applying such provision) decided by the arbitrator (and not the Court). This result is *exactly* as contemplated by both applicable law *and* the very arbitration agreement (i.e., the Arbitration Agreement) that Defendant purports to want to

have enforced.[7] But notably, Defendant did not ask the Court to compel arbitration.[8] To the contrary, it affirmatively indicated that it did *not* wish for the Court to submit the case to arbitration. (Doc. No. 29 at 7 ("[T]he Court should not submit [Plaintiffs'] claims to arbitration.")). Instead, and as discussed above, Defendant asked the Court for (and only for) *summary judgment*—relief that the Court cannot properly grant.

CONCLUSION

For the reasons discussed above, the Court cannot properly afford the specific relief requested by Defendant in the Motion. Therefore, the Motion (Doc. No. 28) is **DENIED**.

IT IS SO ORDERED.

_Eli Richardson_

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[7] Defendant cites *Brown v. EQ Indus. Servs., Inc.*, No. 18-11623, 2019 WL 1988565, at *6 (E.D. Mich. May 6, 2019) to support its assertion that the Court should not submit Plaintiffs' claims to arbitration but instead dismiss Plaintiffs' claims as being untimely. Not only is the case not binding on this Court, but the Court finds that it is not persuasive, because the court in *Brown* focused its analysis on answering whether the relevant limitations period provision was enforceable, without first addressing whether it (as opposed to an arbitrator) could properly answer that question. *Id.*

[8] Because the Court has not been requested to require Plaintiffs' claims to go to arbitration, it need not decide whether the case should go to arbitration—and so it need not decide herein whether the Arbitration Agreement is *actually* enforceable—versus being appropriately assumed *arguendo* (to Defendant's advantage) to be enforceable.